IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BOARD OF TRUSTEES, SHEET METAL WORKERS' NATIONAL PENSION FUND, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>WENDY ROCK,<br><br>Defendant. | 1:23-cv-15816<br>Judge Franklin U. Valderrama |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Board of Trustees, Sheet Metal Workers' National Pension Fund; Board of Trustees, International Training Institute for the Sheet Metal and Air Conditioning Industry; Board of Trustees, National Stabilization Agreement of the Sheet Metal Industry Trust Fund; Board of Trustees, Sheet Metal Occupational Health Institute Trust Fund; Board of Trustees, National Energy Management Institute Committee (collectively, National Funds), together with SMART Local 265 Pension Fund; SMART Local 265 Supplemental Retirement Savings Plan; SMART Local 265; SMART Local 265 Vacation Fund; SMART Local 265 Joint Apprentice Training Committee; Katie Eby; SMART Local 265 Labor Management Cooperative Committee Trust Fund; and Sheet Metal Workers Local 265 Industry Fund (collectively, Local Funds, and together with the National Funds, Plaintiffs), employee benefit plans/trust funds or joint labor management organizations, sued Wendy Rock, the owner of United Building & Energy Services, LLC (UB&E Services)

seeking to collect delinquent fringe contribution payments owed by UB&E. R. 18, FAC.[1] The Local Funds obtained a judgment against UB&E Services for delinquent fringe benefit contributions in the Northern District of Illinois (Illinois Judgment), and the National Funds obtained a judgment against UB&E Services and United Building & Energy Sciences, Inc. (UB&E Sciences) for delinquent contributions and withdrawal liability in the Eastern District of Virginia (Virginia Judgment). In this lawsuit, Plaintiffs seek to recover the outstanding judgments entered against UB&E Services and UB&E Sciences in the Illinois Judgment and the Virginia Judgment based on claims that Rock is the alter ego of UB&E Services (Count I) and that the Court should pierce the corporate veil of UB&E Services to find Rock personally liable for UB&E Services' debts (Count II). Additionally, Plaintiffs bring a claim against Rock under the Illinois Uniform Fraudulent Transfer Act, 740 ILCS 160/5, on the basis that Rock transferred assets from UB&E Services to benefit herself personally, without any reasonably equivalent value to UB&E Services (Count III).

Before the Court is Rock's motion to dismiss for lack of subject matter jurisdiction, or in the alternative for judgment on the pleadings, or in the alternative for summary judgment[2] and Plaintiffs cross-motion for summary judgment. R. 58,

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

[2]Rock titles her motion as a motion for judgment on the pleadings, or in the alternative for summary judgment; however, her first argument is that the Court lacks subject matter jurisdiction over Plaintiffs' claims, R. 58-10, Def.'s Memo. at 5–7, which is an argument for dismissal under Federal Rule of Civil Procedure 12(b)(1). *See, e.g.*, *Mohammad v. IndyMac Bank, F.S.B./One W. Bank, F.S.B.*, 2018 WL 1252112, at *1 (N.D. Ill. Mar. 12, 2018) (construing jurisdictional arguments raised in defendants' Rule 12(c) motion for judgment on

Def.'s Mot.; R. 63, Pls.' Cross-Mot.[3] For the reasons discussed below, Rock's motion for judgment on the pleadings or in the alternative for summary judgment is granted in part and denied in part, and Plaintiffs' cross-motion for summary judgment is denied.

## Background

The facts herein are undisputed unless otherwise specified. In deciding cross-motions for summary judgment, the Court views the facts in the light most favorable to the respective non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012). So, when the Court evaluates Plaintiffs' cross-motion for summary judgment, Rock gets the benefit of reasonable inferences; conversely, when evaluating Rock's motion, to the extent it is one for summary judgment, the Court gives Plaintiffs the benefit of the doubt. On summary judgment, the Court assumes the truth of the facts presented by the parties, but does not vouch for them. *Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 281 (7th Cir. 2015).

### I. Local Rule 56.1 Statements and Responses

Before considering the merits of the motions, the Court first addresses objections to, and evidentiary issues with, certain statements of fact, and the parties'

---

the pleadings to be requesting dismissal based on a lack of subject matter jurisdiction under Rule 12(b)(1)).

[3]Together, the briefs, Local Rule 56.1 statements and responses, and evidence filed in support, consist of more than 2,170 pages. A comprehensive opinion was necessary in light of the voluminous record.

respective failures to comply with the Northern District of Illinois' Local Rules relating to the statement of facts.[4]

Local Rule 56.1 governs summary judgment briefing in the Northern District of Illinois. When "a party moves for summary judgment in the Northern District of Illinois, it must submit a memorandum of law, a short statement of undisputed material facts [(L.R. 56.1 Statement)], and copies of documents (and other materials) that demonstrate the existence of those facts." *ABC Acq. Co., LLC v. AIP Products Corp.*, 2020 WL 4607247, at *7 (N.D. Ill. Aug. 11, 2020) (citing N.D. Ill. Local R. 56.1)). The Local Rule 56.1 Statement must cite to specific pages or paragraphs of the documents and materials in the record. *Id.* (citing *Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 818 (7th Cir. 2004)). The Seventh Circuit has repeated that "a district court may strictly, but reasonably, enforce local rules." *Igasaki v. Illinois*

[4]Citations to the parties' briefs are identified as follows: "Def.'s Mot." for Defendant's Motion for Summary Judgment (R. 58); "Def.'s Memo." for Rock's Memorandum of Law in support of her Motion for Judgment on the Pleadings or in the Alternative Summary Judgment (R. 58-10); "Pls.' Cx-Mot." for Plaintiffs' Cross-Motion for Summary Judgment (R. 63); "Pls.' Resp./Cx-Memo." for Plaintiffs' Response to Rock's Motion for Judgment on the Pleadings or in the Alternative Summary Judgment and Plaintiffs' Memorandum of Law in support of their Cross-Motion for Summary Judgment (R. 65-1); "Def.'s Reply/Cx-Resp." for Rock's Reply in support of her Motion for Judgment on the Pleadings or in the Alternative Summary Judgment and Response to Plaintiffs' Cross-Motion for Summary Judgment (R. 87); "Pls.' Cx-Reply" for Plaintiffs' Reply in support of their Cross-Motion for Summary Judgment (R. 100).

Citations to the parties' statements of fact and responses thereto are identified as follows: "DSOF" for Rock's Local Rule 56.1 Statement of Undisputed Facts (R. 58-1); "Pls.' Resp. DSOF" for Plaintiffs' Response to Rock's Statement of Undisputed Facts (R. 61); "PSOF" for Plaintiffs' Local Rule 56.1 Statement of Undisputed Facts (R. 82); "Def.'s Resp. PSOF" for Rock's Response to Plaintiffs' Statement of Undisputed Facts (R. 84); "DSOAF" for Rock's Statement of Additional Facts in response to Plaintiffs' Cross-Motion (R. 85); and Pls.' Resp. DSOAF for Plaintiffs' Response to Rock's Statement of Additional Facts (R. 94).

*Department of Financial and Professional Regulation*, 988 F.3d 948, 957 (7th Cir. 2021).

Both parties take issue with certain evidence cited by the opposing party.

**A. Declarations**

First, Plaintiffs take issue with Rock's declaration submitted in support of her motion. *See* Pls.' Resp./Cx-Memo. at 6–7. According to Plaintiffs, many paragraphs of Rock's declaration are unsupported by evidence or personal knowledge and therefore must be disregarded. *Id.* (citing *Trimble v. All.-DeKalb/Rock-Tenn Co.*, 801 F. Supp. 2d 764, 769 (N.D. Ill. 2011); *Hambrick v. Kijakazi*, 2022 WL 17082516, at *2 (N.D. Ill. Nov. 18, 2022), *aff'd,* 79 F.4th 835 (7th Cir. 2023)). Similarly, Plaintiffs' reply posits that much of Rock's amended declaration, submitted in support of her reply/cross-response, is self-serving and unsupported. Pls.' Cx-Reply at 1–2.

Under Rule 56(c), an affidavit or declaration used to support or oppose a motion for summary judgment must "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Similarly, Federal Rule of Evidence 602 states that a "witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602.

Starting with Rock's declaration, Plaintiffs attack most paragraphs, contending, as stated above, that she lacks personal knowledge of the information contained therein. Pls.' Resp./Cx-Memo. at 6–7. Specifically, Plaintiffs argue that

Rock summarizes the allegations in their FAC without any citation to her personal knowledge of legal pleadings or the topics that she summarizes, and that twelve of her statements of fact rely solely on her declaration. *Id.* at 7 (citing DSOF ¶¶ 9–20). Plaintiffs, however, dispute only one of the twelve cited statements of fact. *See* Pls.' Resp. DSOF ¶¶ 9–20. Therefore, the Court finds Plaintiffs' issue with the non-disputed statements of fact to be moot. *See* Pls.' Resp. DSOF ¶¶ 9–17, 19–20; *see also id.* ¶ 23. Plaintiffs do challenge several of Rock's statements of fact—which are supported only by her declaration—arguing that they incorrectly and incompletely summarize the theories of liability in the Underlying Lawsuits,[5] as well as in the instant case. Pls.' Resp./Cx-Memo. at 7 (citing DSOF ¶¶ 18, 26). While the Court disagrees with Plaintiffs that Rock lacks personal knowledge of the Underlying Lawsuits or this case, to the extent that she offers legal conclusions, especially ones that contradict the Court's own interpretation of filings in the Underlying Lawsuits and the instant case, the Court will disregard those statements of fact. *See, e.g.*, *Rivera v. Guevara*, 319 F. Supp. 3d 1004, 1018 (N.D. Ill. 2018). Finally, as to Rock's statements of fact, supported only by her declaration, that a January 20, 2022, citation to discover Rock's assets in the National Funds Litigation was never extended by the Court, the Court disagrees with Plaintiffs that Rock does not have personal knowledge of that fact, and thus will consider it, to the extent that it is material.

---

[5]As defined below, the Underlying Lawsuits consist of the Local Funds' lawsuit against UB&E Services in the United States District Court of the Northern District of Illinois and the National Funds' lawsuit against UB&E Services in the United States District Court of the Eastern District of Virginia.

Plaintiffs' cross-reply argues that the Court should disregard at least 14 of Rock's statements of additional facts because they are based only on Rock's "self-serving affidavit containing inadmissible statements of fact." Pls.' Cx-Reply at 2 (citing DSOAF ¶¶ 2, 16, 29, 33–40, 43, 58–59).[6] Plaintiffs rely heavily on *Trimble v. All.-DeKalb/Rock-Tenn Co.*, 801 F. Supp. 2d 764, 769 (N.D. Ill. 2011) to argue that the Court should disregard statements of fact that "merely parrot-word for word—[the party]'s affidavit, which in turn contains allegations and speculation unsupported by [the party]'s personal knowledge or other evidence." *See* Pls.' Resp. DSOAF ¶¶ 2, 16, 33–40, 43. The Court agrees with this proposition, but Plaintiffs take it too far, arguing that the Court should disregard *all* statements supported only by Rock's declaration but no other evidence. As the court in *Trimble* acknowledges, courts may consider statements of fact supported only by a declaration so long as the declaration is based on the declarant's personal knowledge (that is, observation or other first-hand personal experience), and not simply "flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience." 801 F. Supp. 2d at 769 (cleaned up); *see also Payne v. Pauley*, 337 F.3d 767, 772–73 (7th Cir. 2003) (declaration that included a "a very detailed factual account of the incident based upon her first-hand experience" was admissible; while "affidavit that made the conclusory claim—without identifying any specific instances of damages—that some of its damages were unrelated to delay" was inadmissible because it was conclusory

[6]As with many of Rock's statements of fact in support of her motion, Plaintiffs admit statements of additional facts nos. 58 and 59, so the Court considers their objection to the evidence moot. *See* Pls.' Resp. DSOAF ¶¶ 58–59.

but "unsupported by specific facts."). Therefore, to the extent that Rock's statements of additional facts are supported only by her declaration but are based on personal knowledge, supported by her observations or first-hand experience, the Court will consider them (to the extent they are material). Of course, Plaintiffs "remain free to attack the credibility and weight of [Rock's] uncorroborated testimony at trial." *Snow v. Obaisi*, 2021 WL 4439421, at *10 (N.D. Ill. Sept. 28, 2021).

As the undisputed owner of UB&E Services, it is plausible that Rock has personal knowledge of many of the inner workings of the company. Therefore, the Court finds admissible Rock's statements of additional facts nos. 2, 16, and 38–40.

The Court next considers Rock's statement of additional fact no. 34. The Court finds that Rock, as UB&E Services' owner, has sufficient personal knowledge to support her statements that she capitalized UB&E Services through personal loans and that she "never saw any need to formally document the capitalization deposits or loans." DSOAF ¶ 34. However, her statement that she loaned UB&E "about $229,800" between 2013–2021 is not supported by documentation *or* any explanation as to the basis for her calculation, so, the Court will not consider it. *Contra Chicago Reg'l Council of Carpenters Pension Fund v. Carlson Constructors Corp.*, 2025 WL 4718901, at *10 (N.D. Ill. June 12, 2025) (citing *Bd. of Trs. of Plumbers' Loc. Union No. 93 U.A. v. Bos. Plumbing, Inc.*, 2012 WL 3758032, at *3 (N.D. Ill. Aug. 28, 2012) ("Courts have consistently held that affidavits containing calculations of amounts owed are valid when the affiant explains the basis for their calculations, attaches supporting documentation, and is in a position to know and verify the relevant

financial records.")). For the same reason, the Court declines to consider statement of additional fact no. 35. DSOAF ¶ 35 ("During the years 2013 through 2021, Wendy Rock loaned UB&E about $229,800 and even with all the payments she received either directly or by payments for anything personal in nature, she is still owed a substantial sum by UB&E."). So too as to statement of additional fact no. 43, which is based on Rock's unsupported statement that UB&E Services' outstanding debts, at the time it was dissolved, consisted of only "the claims by the Plaintiff Union Funds under the audit which based upon prior audits and even lawsuits filed by Local 265 should have been for a small amount under $3,000." DSOAF ¶ 43. Rock's declaration does not explain how she calculated the $3,000 figure, and it contradicts the amount of the Judgments. That said, the Court considers the statement that UB&E Services did not have *other* outstanding debts apart from the Judgments. *Id.*

In addition to insisting that certain of Rock's statements of additional fact are unsupported, in their responses to the statements of additional fact, Plaintiffs also contend that several facts, supported only by Rock's affidavit, contradict her prior deposition testimony and therefore must be disregarded under the "sham affidavit" rule. "[T]he sham-affidavit rule prohibits a party from submitting an affidavit that contradicts the party's prior deposition or other sworn testimony." *James v. Hale*, 959 F.3d 307, 316 (7th Cir. 2020). The sham affidavit doctrine applies "upon a threshold determination of a contradiction, which only exists when the statements are inherently inconsistent" and the discrepancies are "incredible and unexplained." *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 751 (7th Cir. 2010) (cleaned up). In

contrast, when the change is "plausible and the party offers a suitable explanation such as 'confusion, mistake, or lapse in memory, a change in testimony affects only its credibility, not its admissibility." *Id.* (cleaned up). The Court finds that Rock's statements of additional facts nos. 33 and 36 contradict, at least in part, her prior deposition testimony. Specifically, Rock states in her declaration that she used both her car and Lance's car for work-related purposes. DSOAF ¶ 33 (citing Rock Decl. ¶¶ 33, 38). Rock testified in her deposition, however, that her car was used for personal reasons and that other than to drive to and from the office, it was not used for UB&E's business purposes. Pls.' Resp. DSOAF ¶ 33 (citing R. 79, Pls.' Exh. 11, Rock Dep. at 22)). The Court agrees with Plaintiffs that these statements are contradictory, and therefore the Court disregards the portion of Rock's statement of additional fact no. 33 that her car was used for business purposes. (Plaintiffs do not dispute, however, that there is evidence that Lance's car was used for business purposes. *Id.*). And Rock's declaration supporting statement of additional fact no. 36 states that "Rock balanced UB&E financial books and records on either bimonthly or quarterly," and balanced the books at the end of every year to prepare the tax return, whereas she testified in her deposition that it varies how often she balances the accounts, stating that she had balanced the company's account with U.S. Bank "years ago," the account with Wheaton Bank & Trust three-to-four months ago, and she was not aware that UB&E Services had an account with Fifth Third Bank. Rock Dep. at 29. So, the Court does not consider statement of additional fact no. 36.

On the other hand, the Court disagrees with Plaintiffs that Rock's deposition testimony that UB&E Services did not have a "financial interest" in Rock's home in Glenn Elyn (Pls.' Resp. DSOAF ¶ 37 (citing Rock Dep. at 20)) contradicts her declaration in which she stated that UB&E Services made mortgage payments for the home in lieu of rent "for the UB&E office primarily maintained by Lance Rock which Wendy Rock also used" (DSOAF ¶ 37 (citing Rock Decl. ¶¶ 10, 36)). Renting space in a property is not identical to having a financial interest in it. So, while the statements are somewhat inconsistent, the Court finds them not to *contradict* each other, and the Seventh Circuit has made clear that courts should make a sham determination "with caution," as credibility and weight are generally issues of fact for the factfinder, and "we must be careful not to usurp the [factfinder's] role." *Gavin/Solmonese LLC v. Kunkel*, 2019 WL 1125792, at *1 (N.D. Ill. Mar. 12, 2019). The Court therefore will consider Rock's statement that UB&E Services made mortgage payments for the home in lieu of rent.

Having resolved Plaintiffs' objections, raised in their briefs, to Rock's statements of fact,[7] the Court now turns to Rock's motion to strike certain of Plaintiffs' statements of fact.

[7] Plaintiffs also contend that the Court should disregard Rock's statement of additional material facts related to an audit report that formed the basis of the Judgments. Pls.' Cx-Reply at 2–3. As discussed below, the Court agrees with Plaintiffs that this lawsuit is not the correct forum to litigate the underlying issues decided in the Underlying Litigation, so it finds those facts immaterial. The same goes for Plaintiffs' statement of fact no. 27.

### B. Rock's Motion to Strike

Rock moves to strike various statements included in Plaintiffs' statement of facts. The Court addresses each in turn, as necessary.

First, Rock contends that the evidence supporting Plaintiffs' statement of facts nos. 12 and 13 lack foundation, as they "constitute two pages of an otherwise unidentified document not governed by the parties' stipulation." Def.'s Reply/Cx-Resp. at 12. The Court is somewhat troubled that Plaintiffs provided only partial documents in support of their statements of fact. However, the Federal Rules of Civil Procedure allow parties to oppose summary judgment with materials that would be inadmissible at trial so long as *facts* therein could later be presented in an admissible form. *Olson v. Morgan*, 750 F.3d 708, 714 (7th Cir. 2014) (citing Fed. R. Civ. P. 56(c)(2)–(4))). And Rock cites no authority in support of the proposition that the Court cannot consider statements of fact supported by partial documents that otherwise support the asserted fact, and therefore has waived the argument. *See Lewis v. Mills*, 677 F.3d 324, 332 (7th Cir. 2012) ("Unsupported and underdeveloped arguments are waived.") (cleaned up). Moreover, other courts within this District have noted that courts may consider documents, even if unauthenticated and lacking foundation, so long as they could be presented in an admissible form at trial. *See, e.g.*, *Montoya v. Mitchell*, 2024 WL 1328799, at *3 (N.D. Ill. Mar. 28, 2024) (collecting cases). So, the Court will consider Plaintiffs' statement of facts nos. 12 and 13.

Second, Rock argues that the Court should strike various other statements of fact because the evidence underlying the statements does not support the facts, is not

based on the witnesses' personal knowledge, or constitutes hearsay. Def.'s Reply/Cx-Resp. at 12 (citing PSOF ¶¶ 25, 27, 30, 51). To the extent each statement is material to the Court's analysis below, the Court will determine whether the fact may be considered.

Finally, Rock requests that the Court strike Plaintiffs' statement of facts nos. 55, 67, 68, and 69 because Rock "attempted to determine whether or not the extensive number of documents Plaintiff[ Funds] referred to within [those statements] can support the statement made and it is [Rock's] position that the documents do not support the statement. Def.'s Reply/Cx-Resp. at 12–13. These statements of fact relate to specific payment amounts that Rock paid out of UB&E Service's accounts at Wheaton Bank and Fifth Third Bank to herself, her son Jason Maurer (Maurer), the Village of Glen Ellyn, Christina Moreci (Moreci), various retail stores, the Hawaii Electrical Company, the Bank of Hawaii, and Rock's condominium association. PSOF ¶¶ 55, 67, 68, and 69. Each statement of fact cites to hundreds of pages of evidence. *Id.* As Rock states, courts "will not root through the hundreds of documents and thousands of pages that make up the record here to make [a party's] case for [it]." *Corley v. Rosewood Care Ctr., Inc. of Peoria*, 388 F.3d 990, 1001 (7th Cir. 2004). The Court declines to confirm that the amounts cited by Plaintiffs are accurate; however, based on its review of the evidence, it finds that the documents support that payments in *some* amount from UB&E Service's accounts to the listed recipients were made. Therefore, the Court grants Rock's motion to strike in that it will not consider specific

payment amounts, but denies the request in that it will consider that some payments were made to the various recipients.

Having addressed the issues with the parties' statements of fact and responses, the Court now turns to the factual background of this case.

## II. Material Facts

Rock was the sole member and owner of UB&E Services. DSOF ¶ 2. UB&E Services received a Certificate of Organization from the Wyoming Secretary of State on April 15, 2013. *Id.* ¶ 4. UB&E Services listed its principal office address as 60 East Simpson Avenue, Jackson, WY 83001 with the Wyoming Secretary of State. *Id.* ¶ 5; Pls.' Resp. DSOF ¶ 5. ROCK registered UB&E Services as a foreign LLC with the Illinois Secretary of State on May 7, 2013. DSOF ¶ 6. UB&E Services was administratively dissolved by the Wyoming Secretary of State on June 9, 2021. *Id.* ¶ 7. UB&E Services' status as a foreign LLC with the Illinois Secretary of State was revoked on November 12, 2021. *Id.* ¶ 8.

Plaintiffs are employee benefit plans/trust funds or joint labor management organizations. *See* DSOF ¶¶ 9–18. On September 9, 2017, UB&E Services executed a collective bargaining agreement with SMART, Local 265. PSOF ¶¶ 7–9. On January 3, 2019, Plaintiffs' auditors requested that UB&E Services comply with an audit of its payroll records for the period of January 2016 to December 2018. *Id.* ¶¶ 14–15. UB&E Services refused to cooperate with the Funds' auditors. *Id.* ¶¶ 16–17.

On May 8, 2019, the Local Funds sued UB&E Services in the United States District Court of the Northern District of Illinois to obtain compliance with its

obligations under the CBA and Trust Agreements (Local Funds Litigation).[8] PSOF ¶ 18 (citing 1:19-cv-03116 Dkt. 1 (N.D. Ill.)); *see also* DSOF ¶ 21. On March 4, 2020, UB&E's attorney withdrew from the Local Funds Litigation. PSOF ¶ 36. Despite being given opportunities to hire another attorney, UB&E did not do so. *Id.* ¶ 37.

On March 9, 2021, the National Funds sued UB&E Services in the United States District Court of the Eastern District of Virginia seeking contributions, interest and liquidated damages (National Funds Litigation; together with the Local Funds Litigation, the Underlying Lawsuits). PSOF ¶ 19 (citing 1:21-cv-00292-CMH-JFA Dkt. 1 (E.D. Va.)). The National Funds also sought withdrawal liability due from UB&E Services for its withdrawal from the Fund. *Id.* UB&E Services, Inc., did not file a responsive pleading or otherwise appear in the National Funds Litigation. *Id.* ¶ 38.

On June 9, 2021, UB&E Services was dissolved. PSOF ¶ 41. No notice was provided to the Plaintiffs of the dissolution. *Id.* ¶ 42.

On September 1, 2021, default judgment was entered in the Local Funds Litigation for delinquent fringe benefit contributions due to the Local Funds in the total amount of $671,839.67 (Illinois Judgment). PSOF ¶ 39. On October 25, 2021, default judgment was entered in the National Funds Litigation for delinquent contributions and withdrawal liability due in the amount of $238,642.85 (Virginia Judgment; together with Illinois Judgment, the Judgments). *Id.* ¶ 41. UB&E did not

[8]Rock disputes the facts underlying the claims brought in both the Local Funds Litigation and National Funds Litigation, but does not dispute that those claims were brought in either case. *See* Def.'s Resp. PSOF ¶¶ 18, 19.

move to vacate the judgments in either the Local Funds Litigation or National Funds Litigation. *See* PSOF ¶ 43; 1:19-cv-03116; 1:21-cv-00292-CMH-JFA. To date, no part of either of the Judgments has been paid. PSOF ¶ 44.

Pursuant to post-judgment proceedings to collect amounts due on the Judgments entered in 2021, on July 19, 2022, Lance Rock (Lance) and Rock, testified to the fact that UB&E Services' capitalization was based solely on loans from Wendy Rock. PSOF ¶ 50. The parties dispute whether the loans were documented. Plaintiffs submitted an affidavit from one of their attorneys stating that no documentation to support Rock's claim that the loans were documented was ever produced in response to discovery requests. *Id.* ¶ 57 (citing Pls.' Exh. 12, Chapman Aff.). Rock, on the other hand, points to evidence that tax returns were produced to Plaintiffs. Def.'s Resp. PSOF ¶ 57 (citing Def.'s Exh. 7, Kalnes Dep. at 42:15–43:6, 48:18; R. 68-1, Def.'s Exhs. 12–14). Additionally, Rock cites to her own declaration in which she states, that she "did not create promissory notes but [she] did document loans and tax returns that were produced and [she] did produce bank records some of which may in fact show contributions." *Id.* (citing Def.'s Exh, 25, Rock Am. Decl. ¶ 53(57)). Rock's declaration, however, does not cite to any documentation that she produced, and her response to Plaintiffs' statement of fact cites only to evidence that tax returns were produced. *See id.* The Court therefore accepts as fact that tax returns were produced, but finds too speculative Rock's statement that produced bank records *may* have shown contributions. The Court finds that Rock has sufficient personal knowledge to make

the statement that she documented loans (but, as just stated, the Court finds that there is no evidence that she produced that documentation, apart from tax returns).

Rock and Lance did not receive salaries from UB&E Services. PSOF ¶ 54. Lance had an informal agreement with Rock and UB&E Services that in lieu of actual compensation, salary or hourly rate for his services rendered to the company that UB&E would pay some of his living expenses. DSOAF ¶ 32.

Rock paid her personal condominium fees, mortgage payments, car payments,[9] and payments to Maurer and to herself out of UB&E Services' bank accounts. PSOF ¶¶ 58, 60–61, 63–65).

In this lawsuit, Plaintiffs seek to recover the outstanding judgments entered against UB&E Services and UB&E Sciences in the Illinois Judgment and the Virginia Judgment based on claims that Rock is the alter ego of UB&E Services (Count I) and that the Court should pierce the corporate veil of UB&E Services to find Rock personally liable for UB&E Services' debts (Count II). Additionally, Plaintiffs bring a claim against Rock under the Illinois Uniform Fraudulent Transfer Act, 740 ILCS 160/5, on the basis that Rock transferred assets from UB&E Services to benefit herself personally, without any reasonably equivalent value to UB&E Services (Count III).

[9]Although Rock disputes that UB&E Services made payments for her "personal vehicle," as the car was used for business purposes (Def.'s Resp. PSOF ¶ 63), as discussed above, the Court finds that Rock's declaration stating that her car was used for business purposes contradicts her earlier deposition testimony. *See supra* Section Background I. True, the tax returns cited by Rock show automobile expenses for the years 2016 through 2018, but they do not reflect that those expenses for *her* car, as opposed to Lance's car.

Before the Court is Rock's motion to dismiss for lack of subject matter jurisdiction, or in the alternative for judgment on the pleadings, or in the alternative for summary judgment and Plaintiffs' cross-motion for summary judgment.

## Legal Standards

### I. Subject Matter Jurisdiction (Rule 12(b)(1))

By statute, Congress grants federal courts jurisdiction over two types of cases: those that "arise under" federal law, 28 U.S.C. § 1331, and those where there is diversity of citizenship and an amount-in-controversy requirement is met, *id.* § 1332(a). *See Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019). A Rule 12(b)(1) motion tests whether the court has subject matter jurisdiction. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). To survive a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing subject matter jurisdiction. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014). When deciding a facial challenge to subject matter jurisdiction—that is, when the defendant argues that the plaintiff's allegations as to jurisdiction are inadequate—"the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). But district courts may also "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether *in fact* subject matter jurisdiction exists." *Taylor v. McCament*, 875 F.3d 849, 853 (7th Cir. 2017) (citing *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th

Cir. 2009)). In that case, "no presumptive truthfulness attaches to plaintiff's allegations," and the court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Apex Digital*, 572 F.3 at 444 (cleaned up).[10]

### II. Judgment on the Pleadings (Rule 12(c))

"After the pleadings are closed . . . a party may move for judgment on the pleadings." Fed. R. Civ. P. 12 (c). For purposes of a Rule 12(c) motion, "[t]he pleadings include the complaint, the answer, and any written instruments attached as exhibits," such as affidavits, letters, contracts, and loan documentation. *N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452–53 (7th Cir. 1998); *see also United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). As the Seventh Circuit has explained, "[t]he only difference between a motion for judgment on the pleadings and a motion to dismiss is timing: the standard is the same." *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020).

In resolving a motion for judgment on the pleadings, the court is "confined to the matter presented in the pleadings, and [it] must consider those pleadings in the light most favorable to [the non-moving party]." *United Here Loc. 1 v. Hyatt Corp.*, 863 F.3d 588, 595 (7th Cir. 2017). "When a [party] moves for judgment on the pleadings, the motion should not be granted unless it appears beyond doubt that the

[10]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

nonmovant cannot prove facts sufficient to support its position, and that the [moving party] is entitled to relief." *See Federated Mut. Ins. Co.*, 983 F.3d at 312–13 (citing *Scottsdale Ins. Co. v. Columbia Ins. Grp., Inc.*, 972 F.3d 915, 919 (7th Cir. 2020)). "Thus to succeed, the moving party must demonstrate that there are no material issues of fact to be resolved." *Id.* (citing *N. Indiana Gun & Outdoor Shows, Inc.*, 163 F.3d at 452. "District courts should not allow motions for judgment on the pleadings to deprive the non-moving party of the opportunity to make its case." *Id.* (citing *Johnson v. Revenue Mgmt. Corp.*, 169 F.3d 1057, 1060 (7th Cir. 1999)). As with a motion to dismiss, the court views all facts and inferences in the light most favorable to the non-moving party. *St. John v. Cach, LLC*, 822 F.3d 388, 388 (7th Cir. 2016). However, the court need not accept as true any legal assertions. *Vesely v. Armslist LLC*, 762 F.3d 661, 664–65 (7th Cir. 2014). "Judgment on the pleadings is proper where there are no disputed issues of material fact, and the moving party is clearly entitled to judgment as a matter of law." *Artisan v. Burlington Ins. Co.*, 90 F. 4th 893, 896 (7th Cir. 2024).

### III. Summary Judgment (Rule 56)

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Vill. of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v.*

*Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

In deciding cross-motions for summary judgment, the Court views the facts in the light most favorable to the respective non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012). So, when the Court evaluates Plaintiffs' motion for summary judgment, Rock gets the benefit of reasonable inferences; conversely, when evaluating Rock's motion, the Court gives Plaintiffs the benefit of the doubt. On summary judgment, the Court assumes the truth of the facts presented by the parties, but does not "necessarily vouch[] for their accuracy." *Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 281 (7th Cir. 2015). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460

(7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**Analysis**

**I. Subject Matter Jurisdiction**

Because "[s]ubject-matter jurisdiction is the first issue in any case," the Court starts there. *Miller v. Sw. Airlines Co.*, 926 F.3d 898, 902 (7th Cir. 2019). "A federal court must assure itself of subject matter jurisdiction in every case, even those that function to enforce a preexisting judgment," as here. *Boim v. Am. Muslims for Palestine*, 9 F.4th 545, 551–52 (7th Cir. 2021) (citing *Peacock v. Thomas*, 516 U.S. 349 (1996)). ERISA authorizes civil actions to recover unpaid withdrawal liability from employers who participate in multiemployer pension plans. 29 U.S.C. § 1451(a). But "ERISA does not provide an enforcement mechanism for collecting judgments." *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 826 (1988).

Recall, the First Amended Complaint alleges claims against Rock for alter ego liability, liability under a piercing-the-corporate veil theory, and for violations of the Illinois Uniform Fraudulent Transfer Act. FAC.

According to Rock, there is no live ERISA dispute, as Plaintiffs do not allege that Rock has violated or is currently violating ERISA.[11] Def.'s Memo. at 7. Instead, argues Rock, Plaintiffs merely seek to collect judgments previously entered against UB&E Services, meaning that they seek vicarious rather than direct liability against Rock. *Id.* Therefore, posits Rock, the Court lacks subject matter jurisdiction over Plaintiffs' claims. *Id.* (citing *Peacock*, 516 U.S. 349; *East Central Illinois Pipe Trades Health & Welfare Fund v. Prather Plumbing & Heating, Inc.*, 3 F.4th 954, 961 (7th Cir. 2021)).

Predictably, Plaintiffs disagree, arguing that both *Peacock* and *Prather Plumbing* are inapposite, as they address third-party liability (under a piercing-the-corporate veil theory and under successor liability, respectively), whereas the Seventh Circuit addressed and specifically rejected the argument that *Peacock* requires alter ego claims brought pursuant to ERISA to be decided under state law.[12] Pls.' Resp./Cx-Memo. at 8 (citing *Bd. of Trs., Sheet Metal Workers' Nat. Pension Fund*

---

[11]In her reply/cross-response, Rock may also argue that dismissal of Plaintiffs' alter ego claim is appropriate because the FAC does not allege that Rock herself violated ERISA. Def.'s Reply/Cx-Resp. at 8 ("Here, there is no allegation that ROCK violated ERISA when UB&E Services and the Union Funds had a viable operating agreement and there is no allegation that ROCK continued to operate in violation of any collective bargaining agreement obligations after Local 265 terminated their relationship in December 2019."). To the extent this is an argument for dismissal of (or judgment in her favor on) Count I, as opposed to an argument against application of federal law to Count I (which, at bottom underlies the subject matter jurisdiction inquiry), the Court agrees with Plaintiffs that they have done enough to put Rock on notice of their alter ego claim against her. Pls.' Cx-Reply at 4 (citing *Elite Erectors, Inc.,* 212 F.3d at 1038).

[12]In reply, it appears that Rock claims that Plaintiffs waived the argument that the Court has subject matter jurisdiction. *See* Def.'s Reply/Cx-Resp. at 1. However, her reply also addresses Plaintiffs' arguments and authority relating to subject matter jurisdiction. *Id.* at 3–6. The Court finds that Plaintiffs have not waived any argument relating to subject matter jurisdiction.

*v. Elite Erectors, Inc.*, 212 F.3d 1031, 1037–38 (7th Cir. 2000)). Rock, the way Plaintiffs see it, conflates their alter ego claim with their piercing-the-corporate veil claim. *Id.* at 1–2. The Court finds that Plaintiffs have the better of the argument.

The Court starts by examining the binding cases relied on by the parties, beginning with *Peacock*. The plaintiff in *Peacock* won a judgment in an ERISA class action suit against his employer. 516 U.S. at 351. His employer did not pay the judgment, so the plaintiff filed a second lawsuit against Peacock, an officer and shareholder of plaintiff's employer, alleging that Peacock violated state law by fraudulently conveying and conspiring to siphon his employer's assets to avoid paying the judgment, as well as raising a claim for "Piercing the Corporate Veil Under ERISA and Applicable Federal Law," seeking to hold Peacock vicariously responsible for his employer's liability. *Id.* at 352. The Supreme Court held that the district court lacked both federal question and ancillary jurisdiction over the second lawsuit, as no part of the complaint alleged a violation of ERISA, and the veil piercing claim did not confer jurisdiction because "[p]iercing the corporate veil is not itself an independent ERISA cause of action," but instead reflects a means of imposing liability based on an underlying cause of action. *Id.* at 353–54.

Similarly, in *Prather Plumbing*, the plaintiff benefit funds sought to recover an existing ERISA judgement from a newly formed company under the federal common law doctrine of successor liability. 3 F.4th 954. The Seventh Circuit held that the court lacked subject matter jurisdiction over the claim because it did not "arise under" ERISA, noting that "ERISA does not provide an enforcement mechanism for

collecting judgments." *Id.* at 961. Without any claim that the new company itself violated one of ERISA's substantive provisions, the claim premised purely on successor liability did not provide an independent basis for federal jurisdiction. *Id.*

So, Rock is correct that *Peacock* and *Prather Plumbing* stand for the proposition that a claim seeking to hold a third party liable for an underlying ERISA judgment does not arise under federal law. Therefore, if Plaintiffs had alleged only Count II, for piercing the corporate veil, the Court would lack subject matter jurisdiction. But as Plaintiffs point out, they also assert an alter ego claim.

In *Elite Erectors*, the Seventh Circuit found that "a contention that A is B's 'alter ego' asserts that A and B are the same entity; liability then is not vicarious but direct." 212 F.3d at 1038. As the Seventh Circuit explained in *Prather Plumbing*, it had reasoned in *Elite Erectors* that "alter ego liability arguments are, in substance, claims for direct liability under ERISA, because they allege that a new company is one and the same as the old company and has therefore violated ERISA by failing to comply with the contractual obligations of the old company. In that situation, a fund can invoke the cause of action in ERISA, 29 U.S.C. § 1132, to pursue a claim against the alleged alter ego for itself violating ERISA." *Prather Plumbing*, 3 F.4th at 962–63 (citing *Elite Erectors*, 212 F.3d at 1038).

True, as Rock points out in reply, *Elite Erectors* involved an alter ego claim brought in the original case, in which the plaintiffs also brought an ERISA claim against the employer. 212 F.3d at 1038. But, as stated above, the Seventh Circuit in *Prather*, which did involve a second suit to collect a judgment, relied on *Elite Erectors*

to state, in *dicta*, that a court would have jurisdiction over a plaintiff fund's alter ego claim in a subsequent lawsuit. *Prather Plumbing*, 3 F.4th at 962–63. Moreover, several district courts have relied on *Elite Erectors* and *Prather Plumbing* to find that they possess subject matter jurisdiction over alter ego claims where the plaintiffs are seeking to hold another entity liable for a prior ERISA judgment against an employer. *See Plumbers' Pension Fund, Loc. 130, U.A. v. Pellegrini Plumbing, LLC*, 2023 WL 264392, at *1, *3–4 (N.D. Ill. Jan. 18, 2023) ("[T]his Court has subject matter jurisdiction over the alter ego claim (Count I). The Funds allege that Daniel Pellegrini Plumbing, LLC is the alter ego of Pellegrini Plumbing, LLC [the entity against which judgment was entered in the first case], so a violation of ERISA by one is a violation of ERISA by the other. In essence, it is a claim that Daniel Pellegrini Plumbing, LLC *itself* violated ERISA, because Daniel Pellegrini Plumbing, LLC *is* Pellegrini Plumbing, LLC."); *Cent. States, Se. & Sw. Areas Pension Fund v. DT Leasing, LLC*, 2022 WL 2159827, at *2 (N.D. Ill. June 15, 2022); *Trs. of Sheet Metal Workers Loc. No. 1 Welfare Tr. v. Pekin Climate Control, Ltd.*, 669 F. Supp. 2d 924, 928–29 (C.D. Ill. 2009). The Court agrees that both *Elite Erectors* and *Prather Plumbing* stand for this proposition.

In reply, Rock contends that *Pekin Climate Control*, cited by Plaintiffs, is distinguishable because the complaint in that case sufficiently alleged continuing ERISA violations against the alter ego, PCC, which was a "disguised continuance" of the employer against which judgment had been entered (Meyer), and that did not wind up its affairs and that asset transfer was a sham." Def.'s Reply/Cx-Resp. at 6

(citing 669 F. Supp. 2d at 928–29). The allegations which Rock cites, however, all support the claim that PCC was the alter ego of Meyer; they do not claim that PCC itself (except as the alter ego of Meyer) had violated or was violating ERISA. 669 F. Supp. 2d at 928–29. And, importantly, in *Prather Plumbing*, the Seventh Circuit stated that the plaintiffs could have alleged the defendant "directly violated ERISA *either as an alter ego of Prather Plumbing or in its own right*." 3 F.4th at 953 (emphasis added). As the court in *DT Leasing* found, "this language shows that an 'alter ego' claim is a direct liability claim that arises under ERISA even without accompanying allegations of direct involvement." 2022 WL 2159827, at *2 (citing *Pekin Climate Control*, 669 F. Supp. 2d at 928). Here, as Plaintiffs point out, the FAC's introductory paragraphs clearly state that the Complaint is brought pursuant to violations of ERISA, and Count I alleges an alter ego claim against Rock. Pls.' Resp./Cx-Memo. at 9–10. The Court finds that the FAC has adequately pled a direct liability claim against Rock arising under ERISA, which confers federal question jurisdiction.

The Court therefore denies Rock's motion to dismiss the FAC for lack of subject matter jurisdiction. Having found that it has jurisdiction over the case, the Court now turns to the parties' cross-motions related to Plaintiffs' alter ego claim.

## II. Alter Ego

As an initial matter, the parties' cross-motions dispute what law governs Plaintiffs' alter ego claim. Rock, on one hand, takes the position that state law applies.

Def.'s Memo. at 10. Plaintiffs, on the other hand, argue that federal law applies. Pls.' Resp./Cx-Memo. at 10 (quoting *Flynn v. R.C. Tile,* 353 F.3d 953, 958 (D.C. Cir. 2004)).

The Court finds there to be substantial overlap between this argument and the above argument relating to subject matter jurisdiction. That is, because the Court finds that Plaintiffs' alter ego claim *arises under* federal law, it goes without saying that federal law applies. *See, e.g.*, *Teamsters Loc. Union No. 727 Health & Welfare Fund v. De La Torre Funeral Home & Cremation Servs., Inc.*, 2023 WL 4664918, at *4–6 (N.D. Ill. July 20, 2023) (finding that court had subject matter jurisdiction case seeking to enforce a prior judgment, in which plaintiff brought an alter ego claim, and analyzing claim under federal law); *Bd. of Trs. of Plumbers & Pipefitters Loc. No. 172 Welfare Fund v. Matrix Plumbing & Heating, Inc.*, 2012 WL 1066758, at *4 n.3 (N.D. Ind. Mar. 28, 2012) ("The Plaintiffs proceed under federal law rather than state law because they seek direct liability under an alter ego analysis rather than vicarious liability under a traditional veil piercing analysis.").

The cases cited by Rock in support of the proposition that state law applies, *Elite Erectors*, 212 F.3d at 1037 and *Canter v. AT&T Umbrella Benefit Plan No. 3*, 2020 WL 13505363, at *3 (N.D. Ill. July 6, 2020) do not change this conclusion. That is, as discussed in-depth above, although the Seventh Circuit in *Elite Erectors* found that "efforts to hold corporate officers *vicariously liable* for their firms' pension debts arise under state rather than federal law, and that an effort to '*pierce the corporate veil*' to collect a judgment under ERISA therefore belongs in state court, it also found that an alter ego claim is a *direct liability* claim, and therefore arises under federal

law. *Elite Erectors*, 212 F.3d at 1037–38 (emphases added). True, in *Canter* the court stated in passing that, "to the extent alter-ego or veil-piercing liability is applicable to any ERISA claim, state law of vicarious/alter-ego liability applies." 2020 WL 13505363, at *3. But the court relied on the same portion of *Elite Erectors* cited by Rock, and which, for the reasons stated above, the Court finds does not stand for the proposition that alter ego claims arise under state law. The Court therefore respectfully disagrees with the *Canter* court's conclusion that alter-ego liability for any ERISA claim falls under state law.

**A. Rock's Motion**

*i. Separate Cause of Action*

Rock argues that, under both Wyoming and Illinois law, "alter ego" is not a separate claim, so Count I must be dismissed. Def.'s Memo. at 10–11 (citing, *inter alia*, *Morgan v. BJ Servs. Co.*, 2015 WL 13545183, at *3 (D. Wyo. Mar. 2, 2015); *A.L. Dougherty Real Est. Mgmt. Co., LLC v. Su Chin Tsai*, 98 N.E.3d 504, 515 (Ill. App. Ct. Dec. 29, 2017)). Because the Court finds that federal, not state, law applies to Plaintiffs' alter ego claim, this argument is a non-starter. In Rock's reply/cross-response, she explains that an alter ego claim is not a separate cause of action not only under state law, but also under federal law. Def.'s Reply/Cx-Resp. at 1. To the extent that Rock advanced this argument—which is not completely clear—the Court finds it unpersuasive. That is, apart from *Elite Erectors* and *Canter*, none of the federal cases cited by Rock in support of the proposition that an alter ego claim is not a standalone cause of action involve alter ego claims under ERISA. Def.'s Memo. at

10 (citing *Golin v. Neptune Mgmt. Corp.*, 704 F. App'x 591, 594 (7th Cir. 2017) (finding that, in a non-ERISA case, veil-piercing under state law "is not itself an action"); *Hyer Standards, LLC v. Super G Cap., LLC*, 2020 WL 2836774, at *6 (N.D. Ill. June 1, 2020) (same); *Pomaranski v. Chicago Prime Packers, Inc.*, 2024 WL 3950315, at *6 (N.D. Ill. Aug. 27, 2024) (same, including alter ego liability under state law); *Morgan*, 2015 WL 13545183, at *3 (same); *Petti v. Fraker*, 2020 WL 10356604, at *13 (D. Wyo. Dec. 31, 2020) (same)).

The Court agrees with Plaintiffs that "ERISA enables trustees to pursue alter ego liability to 'recover delinquent contributions from a sham entity used to circumvent the participating employer's pension obligations.'" Pls.' Resp./Cx-Memo. at 10 (quoting *Flynn v. R.C. Tile,* 353 F.3d 953, 958 (D.C. Cir. 2004)). Indeed, several cases cited by the parties allow standalone alter ego claims seeking liability for prior ERISA judgments to proceed. *See, e.g.*, *DT Leasing*, 2022 WL 2159827, at *2; *Pellegrini Plumbing*, 2023 WL 264392, at *3–4.

In her reply/cross-response, Rock contends that Plaintiffs "completely ignored" her argument that regardless of what law applies, alter ego and veil piercing do not constitute standalone causes of action, and therefore Plaintiffs waived the argument. Def.'s Reply/Cx-Resp. at 1–2 (citing, *inter alia*, *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010)). The Court disagrees that Plaintiffs failed to address this issue in a way resulting in waiver. That is, Plaintiffs maintain in their response/cross-memorandum that their alter ego claim is brought under federal law[13]; therefore,

[13]The Court therefore also disagrees with Rock that Plaintiffs admitted that the Wyoming Limited Liability Act applies to their alter ego claim. *See* Def.'s Reply/Cx-Resp. at 7–8.

there was no need for them to respond to Rock's contention that an alter ego claim is not an independent cause of action under state law. *See* Pls.' Resp./Cx-Memo. at 8–10 & n.5 ("As stated above, the alter ego liability claim is governed by federal law and Illinois and Wyoming law are irrelevant"). And, as stated above, the Court finds that Rock's memorandum is not clear in arguing that an alter ego claim premised on ERISA liability is not a standalone claim, so if anything, Rock herself waived this cursory argument. *See White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021) ("perfunctory and undeveloped arguments, as well as arguments that are unsupported by pertinent authority, are waived.").

*ii. Dissolution of UB&E Services*

Rock next argues that both the alter ego claim and veil piercing claim must be dismissed because UB&E Services was dissolved by the Wyoming Secretary of State on June 9, 2021. Def.'s Memo. at 11–13. In support, Rock relies on *Matos v. Richard A. Nellis, Inc.*, in which the court found that a party could not pierce the corporate veil where "there is no extant corporation whose separate existence may be disregarded." *Id.* at 12 (citing 101 F.3d 1193, 1195 (7th Cir. 1996)). Plaintiffs counter that *Matos*, which involves veil piercing under state law, is inapplicable to Plaintiffs' alter ego claim brought under ERISA. *See* Pls.' Cx-Reply at 16. The Court agrees with Plaintiffs.

As explained above, alter ego claims, unlike veil piercing, are claims for direct liability, "because they allege that a new company is one and the same as the old company and has therefore violated ERISA by failing to comply with the contractual

obligations of the old company." *Prather Plumbing*, 3 F.4th at 962–63 (citing *Elite Erectors*, 212 F.3d at 1038). Therefore, it is irrelevant to an alter ego claim that the old company against which judgment was entered is dissolved. *See, e.g.*, *Pellegrini Plumbing*, 2023 WL 264392, at *1, *4 (allowing ERISA alter ego claim against new company to proceed where plaintiffs sought to hold the new company responsible for the unpaid contributions owed by the old, dissolved company); *Pekin Climate Control*, 669 F. Supp. 2d at 926, 929 (same). Therefore, the Court denies Rock's motion for judgment on the pleadings as to Plaintiffs' alter ego claim based on UB&E Services' dissolution.

*iii. Res Judicata*

Finally, Rock contends that dismissal of the alter ego and veil piercing claims[14] is warranted under the doctrine of *res judicata*. Def.'s Memo. at 13–15. From Rock's perspective, Plaintiffs should have named Rock as a Defendant in the Underlying Lawsuits, and indeed, in the National Funds Litigation, the National Funds named UB&E Sciences as the alter-ego of UB&E Services, alleging, in part, that Rock was the director of both companies and that members of a controlled group are treated as a single employer. *Id.* at 13. Predictably, Plaintiffs disagree, pointing to several cases in which courts have rejected this argument in factually similar cases. Pls.' Resp./Cx-Memo. at 15 (citing *Pekin Climate Control*, 669 F. Supp. 2d at 930; *DT Leasing*, 2022 WL 2159827, at *3). The Court finds that Plaintiffs have the better of the argument.

[14]Although the heading of Rock's section on *res judicata* indicates that the argument applies to all claims, in the body of the argument, Rock only specifies the alter ego and veil piercing claims. Def.'s Memo. at 13.

The parties agree that the federal common law of *res judicata* applies. Def.'s Memo. at 13–14; Pls.' Resp./Cx-Memo. at 15. Under the "federal law of res judicata, three requirements exist: (1) an identity of the parties or their privies; (2) an identity of the causes of action; and (3) a final judgment on the merits. An identity of cause of action essentially means that the earlier action and the present action derive from a common nucleus of operative facts." *Pekin Climate Control*, 669 F. Supp. 2d at 930 (cleaned up). In *Pekin Climate Control*, which, as discussed above, also involved an underlying judgment in an ERISA suit and a subsequent alter ego ERISA claim seeking to recover that judgment, the court found that *res judicata* did not apply to the plaintiff's alter ego claim. *Id.* Specifically, the court found that the defendant had not established that an identity of causes of action existed, reasoning that, "[a]lthough this action and the previous suit have both involved Meyer's [(the underlying employer)] ERISA violation, the present action is focused on facts that could potentially establish that PCC [(the employer's company)] and [an additional named defendant] are Meyer's alter egos (i.e. that Defendants *are*, and should be treated as, Meyer vis-à-vis the underlying ERISA violation) whereas the prior action focused on facts surrounding the ERISA violation itself." *Id.* The court found that the defendants had "not presented any coherent or developed argument to show why facts relating to their alleged alter-ego relationship with Meyer should have been raised and litigated in the prior action." *Id.* The court in *DT Leasing* relied on *Pekin Climate Control* to reject a nearly identical argument.

Rock fails to address the reasoning in *Pekin Climate Control* and *DT Leasing* in reply (Def.'s Reply/Cx-Resp), and therefore has waived any argument against said reasoning, *see In re GT Automation Grp., Inc.*, 828 F.3d 602, 605 (7th Cir. 2016) ("An argument not responded to is ordinarily deemed waived."). Waiver aside, the Court agrees with the reasoning articulated in *Pekin Climate Control* that there is no identity between the causes of action in the Underlying Lawsuits and Plaintiffs' alter ego claim against Rock. And as Plaintiffs point out in their response/cross-memorandum, simply because the National Funds knew of one alter ego, UB&E Sciences, does not create a privity between the cause of action against that alter ego and this case against Rock. Pls.' Resp./Cx-Memo. at 16. Rock does not cite any authority supporting that proposition, and, as already indicated, she did not reply to Plaintiffs' arguments against *res judicata*. Like the courts in *Pekin Climate Control* and *DT Leasing*, the Court finds that Rock, who bears the burden of establishing *res judicata* as an affirmative defense, has failed to meet that burden. The Court therefore rejects her *res judicata* defense.

The Court denies Rock's motion for judgment on the pleadings (or alternatively for summary judgment) as to Plaintiffs' alter ego claim arising under ERISA. The Court now turns to Plaintiffs' cross-motion, in which they seek summary judgment on their alter ego claim.

**B. Plaintiffs' Cross-Motion**

For the reasons stated above, the Court applies federal law to Plaintiffs' alter ego claim. The determination of whether an individual is an alter ego of another

"focuses on . . . an attempt to avoid the obligations of a collective bargaining agreement, such as through a sham transfer of assets." *Int'l Union of Operating Eng'rs Local 150 v. Centor Contractors, Inc.* 831 F.2d 1309, 1312 (7th Cir. 1987) (cleaned up) ("[U]nlawful motive or intent are critical inquiries in an alter ego analysis."). In an alter ego analysis, "[t]he factors a court should consider are 1) the amount of respect given to the separate identity of the corporation by its shareholders; 2) the fraudulent intent of the incorporators; and 3) the degree of injustice visited on the litigants by respecting the corporate entity." *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 85 F.3d 1282, 1287 (7th Cir. 1996) (cleaned up). Plaintiffs seek summary judgment on this claim, arguing that all three factors are present in this case. The Court addresses each in turn.

Starting with the first factor, lack of respect for the corporate entity, Plaintiffs posit that Rock did not treat UB&E Services' bank accounts as funds of a separate entity from herself, as she capitalized UB&E Services through undocumented loans, compensated herself and her son, Maurer, in non-standardized increments, used the company's corporate bank accounts to make mortgage payments on her residential home in Glen Ellyn, Illinois and her condominium in Hawaii, and used such accounts to make car payments on her personal car. Pls.' Resp./Cx-Memo. at 11. Additionally, point out Plaintiffs, after UB&E Services was dissolved by the Wyoming Secretary of State, Rock continued to make payments to herself, Maurer, her bookkeeper, and for personal expenses, draining UB&E Services' bank accounts. *Id.* at 12. Citing just one non-binding case in support, Plaintiffs argue that "[c]ourts have found a failure to

respect the separate identity of a corporation with less compelling facts than found in this case." *Id.* at 11–12 (citing *Bd. of Trs. of Plumbers & Pipefitters Loc. No. 172 Welfare Fund v. Matrix Plumbing & Heating, Inc.*, 2012 WL 1066758 (N.D. Ind. Mar. 28, 2012)).

In *Matrix,* the employer, Matrix, was bound by a collective bargaining agreement and failed to make payments to the affiliated fringe benefit funds on behalf of its employees performing bargaining unit work. 2012 WL 1066758, at *2. Judgment was entered against Matrix and one month later, Matrix's owner, Laskowski, sold Matrix's assets to one of Matrix's employees, Helms, for $35,000. *Id.* Helms incorporated a new company, MKH, two weeks after the sale, infusing no capital and continuing Matrix's operations under the same name with the same management, clients, and even partially completed jobs. *Id.* at *4. Helms paid the $35,000 to Laskowski from proceeds from one of MKH's jobs. *Id.* at *4, *5. The court not only found Helms and MKH to be alter egos of Matrix, but also, in relevant part, found Laskowski to be an alter ego. *Id.* The court found that Laskowski failed to respect the separate identity of the corporation because Helms did not pay anything for Matrix's assets (given he paid the $35,000 from Matrix's continued operations), Laskowski used $5,000 from that payment to pay personal taxes, admitted in his response that he was "personally liable for debts owed to the Plaintiffs by Matrix," which was then an "apparently defunct corporate entity," and personally signed the assert purchase agreement as the "seller," rather than in his official capacity as the owner or president of Matrix *Id.* at *5.

Rock's reply/cross-response, while mostly focusing on the veil-piercing claim under state law, does argue that under both state and "Federal law, if applicable, there was a respect for the separate existence of the LLC through proper authorization and documentation of the Wyoming LLC." Def.'s Reply/Cx-Resp. at 18. Rock points out that UB&E Services maintained separate bank accounts, issued invoices in its name, collected money from customers in its name, and paid business expenses from its business accounts. *Id.* It had no debt apart from its judgments to Plaintiffs. *Id.* UB&E filed annual tax returns. *Id.* Finally, and importantly, Rock points to evidence that the payments cited by Plaintiffs were made for business purposes. *Id.* at 14. That is, payments were made for her Glen Ellyn home's mortgage in lieu of rent for the office within the home used by Lance and Rock; payment for Rock's Hawaii condominium "was in lieu of salary, profit sharing or loan repayments as she did not directly take a salary and neither did" Lance; and Rock paid Maurer and Moreci for their assistance in performing administrative services for UB&E both before and after it was dissolved. *Id.* Rock declared "officer compensation" annually to the IRS, even though neither she nor Lance took a regular salary. *Id.* at 18; *see* Def.'s Exh. 68-1 at PageID 1952. She maintained a personal financial account, which was separate and distinct from UB&E Services' accounts. Def.'s Reply/Cx-Resp. at 17.

In their cross-reply, Plaintiffs argue, without citation to any authority, that the justifications for UB&E's payments to Rock, Maurer, and Moreci matter not for purposes of the alter ego analysis. Pls.' Cx-Reply at 8–9. The way Plaintiffs see it, the

fact that Rock wrote checks from UB&E's bank accounts to herself, retail stores, and the condominium association for her Hawaii condominium is enough, under *Matrix*, to demonstrate that Rock did not respect the separate identity of UB&E Services. *Id.* at 7. By failing to cite authority on this point, Plaintiffs have waived it. *See Shipley v. Chicago Bd. of Election Commissioners,* 947 F.3d 1056, 1063 (7th Cir. 2020) ("Arguments that are underdeveloped, cursory, and lack supporting authority are waived.").

As an initial matter, the Court notes that Rock does not adduce evidence that certain expenses—namely the payments to retail stores and payments for her personal car—were made in lieu of her salary. However, looking at the evidence as a whole, it is a reasonable inference (when evaluating Plaintiffs' cross-summary judgment motion) that those payments, like the payments to the Hawaii condominium association, were indeed made in place of a salary. As noted above, Plaintiffs cite no cases in support of their argument that the first alter ego factor weighs in their favor apart from *Matrix*. In *Matrix*, there was no discussion of evidence that the $5,000 that Laskowski paid for his personal taxes was in exchange for anything he provided to Matrix (e.g. in lieu of a salary). *See* 2012 WL 1066758, at *5. And Plaintiffs do not cite to evidence here that Rock has admitted that she is personally liable for Matrix's debts (unlike Laskowski), nor that she signed any official UB&E Services' documents in as anything other than her official capacity as the owner. The Court therefore finds *Matrix* distinguishable.

True, Rock's response is not directly on point, and she cites only to inapplicable Wyoming law regarding piercing the corporate veil, but that does not mean that Plaintiffs are automatically entitled to summary judgment. *See Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) ("Even where a nonmovant fails to respond to a motion for summary judgment, the movant still [has] to show that summary judgment was proper given the undisputed facts, with those facts taken as usual in the light most favorable to the nonmovant.") (cleaned up). Based on the arguments and authority presented by Plaintiffs, the Court finds that there is a genuine issue of fact as to whether Rock respected the separate identity of UB&E Services.

The Court now turns to the second prong of the alter ego analysis: intent. Plaintiffs maintain that they have adduced sufficient evidence that Rock intended to avoid UB&E Services' obligations pursuant to its agreement with SMART Local 265. Pls.' Resp./Cx-Memo. at 12–13. Plaintiffs point to evidence that two UB&E Services employees were performing bargaining unit work but that Rock did not report contributions on their behalf. *Id.* at 13 (citing PSOF ¶¶ 46–47). Rock, relying on her own declaration, disputes that the two employees in question worked for UB&E Services during the relevant time period. Def.'s Resp. PSOF ¶¶ 46–47. For the reasons discussed above, *see supra* Background.I, the Court finds that Rock, as the undisputed owner of UB&E Services, has sufficient personal knowledge of UB&E Services' employees' employment status at various times, so, on Plaintiffs' cross-motion, the Court resolves this factual dispute in Rock's favor. Plaintiffs also posit

that Rock "attempted to report just enough hours of work on behalf of Lance to have him earn benefits as a union member at a low cost that did not correspond with his actual hours worked."[15] Pls.' Resp./Cx-Memo. at 13 (citing PSOF ¶¶ 22–23). And, argue Plaintiffs, after Plaintiffs continued to challenge UB&E Services' compliance with the Agreement and Trust Agreements through litigation, UB&E Services terminated the Agreement with SMART Local 265. *Id.* (citing PSOF ¶ 11). Although Plaintiffs contend that this assertion "is undisputed," Rock in fact disputes it, instead taking the position that that Local 265 terminated UB&E Services.[16] Def.'s Resp. PSOF ¶ 11. Therefore, again, on Plaintiffs' cross-motion, the Court accepts Rock's position that Local 265 terminated the CBA. Finally, Plaintiffs assert that Rock continued to use UB&E Services' assets for personal uses while the litigation was pending.[17] Pls.' Resp./Cx-Memo. at 13. As discussed above, however, the Court finds there to be a question of fact as to whether Rock's various payments were for her own

---

[15]Rock disputes that she reported only 100 hours per month on behalf of Lance, citing only her declaration in which she stated that "the fringe benefit contributions averaged in excess of one hundred hours per month for its one Union employee, Lance Rock." Def.'s Resp. PSOF ¶ 22 (citing Rock. Am. decl. ¶ 53(22)). Rock neither cites to any supporting documentation nor explains how she calculated this average, so the Court declines to consider her declaration on this point. *See, e.g.*, *Carlson Constructors Corp.*, 2025 WL 4718901, at *10.

[16]In support, Rock cites two letters from Local 265 to UB&E Services, as well as her own declaration citing to those letters. *Id.* (citing Rock Am. Decl. ¶ 53(11); R. 62-2 at PageID 2025, 2029). The December 19, 2019 letter from Local 265 to Lance has a subject line of "Termination of Eligibility," and states that it "has been informed that you are not performing covered work per the [CBA]. The Health and Welfare Plan cannot accept your Fringe Benefit contribution payment." PageID 2025. The Court finds that this letter is enough to create a question of fact as to whether UB&E Services or Local 265 terminated the CBA.

[17]Plaintiffs also argue that Rock "affirmatively misrepresented the type of work performed to avoid having to pay contributions to the Funds." Pls.' Resp./Cx-Memo. at 13 (citing PSOF ¶¶ 1–3, 17). The cited statements of fact do not support this argument, however.

benefit or in exchange for work performed on behalf of UB&E Services (that is, in lieu of a salary).

Again, Plaintiffs rely primarily on one non-binding case in support. Pls.' Resp./Cx-Memo. at 12–13 (citing *Chicago Dist. Council of Carpenters Pension Fund v. Ceiling Wall Sys., Inc.*, 1999 WL 47078, at *7 (N.D. Ill. Jan. 20, 1999)). In *Ceiling Wall Sys.*, the court found there to be "sufficient evidence of Defendant's intent to perform lucrative Union jobs while fraudulently avoiding any pension fund obligations imposed by the CBA" because (1) union employees were paid via two checks, one from the CBA signatory and one from the non-signatory, and the employer reported only the hours paid on the signatory's checks, and (2) the individual defendant-vice presidents ordered non-union employees working at union job sites to tell anyone who asked them that they were union employees. *Id.* Here, viewing the evidence in the light most favorable to Rock, as the Court must, there is at least a question of fact that UB&E Services had any employees other than Lance that performed bargaining unit work during the relevant period. Nor is there evidence that UB&E Services paid employees via two separate checks to avoid reporting all hours worked to Plaintiffs (given Lance did not receive a paycheck, if Plaintiffs can adduce evidence that he worked more than the number of hours reported to Plaintiffs on Union jobs, this would be evidence of intent). For now, the Court finds *Ceiling Wall Sys.* distinguishable, so it does little to support Plaintiffs' cross motion.

Plaintiffs also cite *Cent. States, Se. & Sw. Areas Pension Fund v. Sloan*, 902 F.2d 593, 597 (7th Cir. 1990), in which the Seventh Circuit found that the transfer of assets to a second company owned by the defendant's wife, with no money changing hands, showed motivation to avoid the collective bargaining agreement. Here, however, while UB&E Services paid Lance, there is evidence that it was for work he performed. There is no evidence, or even allegation, that Rock transferred UB&E's assets for nothing in return to Lance. *Sloan* does nothing to support Plaintiffs' intent argument.

In her reply/cross-response, Rock argues that there is no evidence that Lance's submitted hours were inaccurate and there was only a "baseless suspicion" that others were performing CBA work. Def.'s Reply/Cx-Resp. at 17. Moreover, asserts Rock, there was no transfer of assets during UB&E's operation to avoid debts of liabilities. As with the first prong, even though Rock does not address the cases cited by Plaintiffs, that failure does not necessarily support summary judgment for the movant. *See Robinson*, 1 F.4th at 483. Moreover, as another court in this District observed, courts are "'leary of resolving issues involving state of mind on summary judgment.'" *Laborers' Pension Fund v. Excellence Quest Paving & Maint.*, 2007 WL 3252768, at *5 (N.D. Ill. Oct. 31, 2007) (quoting *Ashman v. Barrows,* 438 F.3d 781, 784 (7th Cir. 2006)). "'Summary judgment is notoriously inappropriate for determination of claims in which issues of intent, good faith, and other subjective feelings play dominant roles.'" *Id.* (quoting *Ashman,* 438 F.3d at 784). The Court

therefore finds there to be a question of fact as to whether Rock intended to avoid UB&E Services' obligations pursuant to its agreement with Local 265.

Finally, as to the third factor, the degree of injustice Plaintiffs would suffer by respecting the corporate form, the Court finds that, since "at this stage in the litigation, questions of fact still remain as to whether" Rock is an alter ago of UB&E Services "it is not possible to discern what, if any, injustice [Plaintiff] Funds may suffer if the court were to find that" Rock is not an alter ago of UB&E Services. *Excellence Quest Paving & Maint.*, 2007 WL 3252768, at *6.

The Court therefore finds that Plaintiffs are not entitled to summary judgment on their alter ego claim. The Court therefore need not definitively decide Rock's argument that the equitable defense of unclean hands precludes summary judgment for Plaintiffs.[18] The Court also need not address Plaintiffs' calculation of the damages due from Rock for her alter ego liability. The Court next turns to the piercing the corporate veil claim.

[18]Because Rock's memorandum in support of her motion for judgment on the pleadings raised only the affirmative defense of *res judicata*, her argument regarding her unclean hands affirmative defense is only appropriately considered in opposition to Plaintiffs' summary judgment motion. *See United States v. Desotell*, 929 F.3d 821, 826 (7th Cir. 2019) ("In most instances, litigants waive any arguments they make for the first time in a reply brief.") (citing *Carroll v. Lynch*, 698 F.3d 561, 568 (7th Cir. 2012); *Gonzalez-Servin v. Ford Motor Co.*, 662 F.3d 931, 934 (7th Cir. 2011)). And, although Rock mentions in passing in her reply/cross-response that she pled the affirmative defenses of "*Res Judicata*, Estoppel by Verdict and Equitable Collateral Estoppel; Unclean Hands; Promissory Estoppel; Laches; Unconscionability and Undue Hardship," she only makes any developed argument as to the application of her unclean hands affirmative defense. *See* Def.'s Reply/Cx-Resp. at 19–25. Finally, the Court agrees with Plaintiffs that yet again Rock conflates the alter ego claim, raised under federal law, and the veil piercing claim, raised under state law. Pls.' Cx-Reply at 17. Her arguments in support of application of the unclean hands affirmative defense are raised under state law, and thus do not apply to the alter ego claim. Def.'s Reply/Cx-Resp. at 19–25. But, as stated above, the Court need to definitively decide at this time if she may raise an unclean hands defense to the alter ego claim.

## III. Piercing the Corporate Veil

The Court starts with Rock's motion for judgment on the pleadings as to the piercing the corporate veil claim. Similar to the alter ego claim, Rock argues that state law, specifically Wyoming law, applies because UB&E Services is incorporated in Wyoming. Def.'s Memo. at 7–10 (citing, *inter alia*, *Elite Erectors*, 212 F.3d at 1038). Unlike their response as to the alter ego claim, Plaintiffs do not dispute that Wyoming law applies to their piercing the corporate veil claim. Pls.' Resp./Cx-Memo. at 17–18 (citing *In re Palmieri v. Specialties Industries II, LLC et al.*, 651 B.R. 349, 357 (N.D. Ill. 2023)). Based on the parties' agreement and cited authority, the Court therefore looks to Wyoming law. *See In re Palmieri*, 651 B.R. at 357 ("When a party seeks to pierce the corporate veil, the law of the state of incorporation governs.").

Rock maintains that under Wyoming law, piercing the corporate veil is not a standalone claim. Def.'s Memo. at 9–11 (citing, *inter alia*, *Ridgerunner, LLC v. Meisinger*, 297 P.3d 110, 116 (Wyo. 2013) ("[P]iercing the corporate veil is a doctrine wherein liability for an underlying cause of action may be imposed upon a particular individual, and not a separate cause of action.") (cleaned up)). Surprisingly, Plaintiffs do not respond to this argument. Rather, they dive straight into an argument that the undisputed facts support piercing the corporate veil in this case to find Rock personally liable for the Judgments against UB&E Services. Pls.' Resp./Cx-Memo. at 17–18. Plaintiffs point out that "[i]n cases involving fringe benefit funds protected by ERISA, 'there is a federal interest supporting disregard of the corporate form to impose liability.'" *Id.* at 17 (quoting *Lumpkin v. Envirodyne Indus., Inc.*, 933 F.2d

449, 460 (7th Cir. 1991)). *Lumpkin* did not apply Wyoming law, however, nor did it involve a standalone veil piercing claim (or one attendant only to an alter ego claim seeking liability for un underlying judgment). And Plaintiffs rely on *Mantle v. North Star Energy & Construction, LLC* to set out the veil piercing test under the Wyoming Limited Liability Act. *Id.* at 18 (citing 437 P.3d 758, 799 (Wyo. 2019)). But *Mantle* also did not involve a standalone veil piercing claim; rather, there were numerous claims and cross-claims, and no underlying judgment that either side was trying to collect, as is the case here. *See* 437 P.3d 758. As Rock points out in her reply/cross-response, by failing to respond to Rock's threshold argument regarding veil piercing as a standalone claim, Plaintiffs have waived it.[19] *See* Def.'s Reply/Cx-Resp. at 1–2 (noting that Plaintiffs failed to respond to her argument that under state law, veil piercing is not a separate cause of action and therefore waived the argument) (citing *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1042 (7th Cir. 1999) ("If [judges] are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning."); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (waiver resulting from their failure to respond to the merits of U.S. Bank's motion to dismiss)); *see also Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 704 (7th Cir.

---

[19]Plaintiffs dispute Rock's contention that they waived a different argument. *See* Pls.' Cx-Reply at 4 (disputing that they waived the subject-matter jurisdiction argument). They do not address her position that they waived the argument relating to veil piercing as a standalone claim, however. (Not that Plaintiffs' cross-reply is the appropriate place for such an argument, which would in fact be a sur-response to Rock's motion for judgment on the pleadings. That did not stop Plaintiffs from disputing her claim about their waiver of the jurisdictional argument though.)

2010) ("[I]t is not this court's responsibility to research and construct the parties' arguments, and conclusory analysis will be construed as waiver.") (cleaned up).

Therefore, based on the arguments before it,[20] the Court must grant Rock's motion for judgment on the pleadings as to Plaintiffs' veil piercing claim. Rock requests that the dismissal be with prejudice. Def.'s Memo. at 11. Plaintiffs did not request leave to amend or suggest how they could cure the defects in their FAC. *See Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 335 (7th Cir. 2018) ("Nothing in Rule 15, nor in any of our cases, suggests that a district court must give leave to amend a complaint where a party does not request it or suggest to the court the ways in which it might cure the defects. To the contrary, we have held that courts are within their discretion to dismiss with prejudice where a party does not make such a request or showing."). Therefore, the dismissal of Count II is with prejudice.

The Court necessarily does not reach Plaintiffs' cross-motion for summary judgment on the veil piercing claim.

[20]The Court notes that one of the cases cited by Plaintiffs in support of their cross-summary judgment motion, and specifically in support of the proposition that fraud is the only factor by itself that can justify piercing the veil, has a similar fact pattern to the instant case. Pls.' Resp./Cx-Memo. at 20 (citing *GreenHunter Energy, Inc. v. W. Ecosystems Tech., Inc.*, 337 P.3d 454, 469 (Wyo. 2014)). Specifically, the Wyoming supreme court in *GreenHunter Energy* upheld the district court's judgment on a standalone piercing the veil claim brought to hold the sole member of an LLC liable for a judgment entered against the LLC in a separate action. 337 P.3d at 458. That would suggest that a standalone veil piercing claim *can* proceed in Wyoming; however, it does not appear that the Wyoming supreme court, nor the district court, engaged with the question of whether a standalone veil piercing claim is appropriate. *See GreenHunter Energy*, 337 P.3d 454; *Western Ecosystems Technology, Inc. v. Greenhunter Energy, Inc.*, No. 201287, 2013 WL 8719179 (Wyo. Dist. Dec. 10, 2013). And, crucially, as stated above, Plaintiffs did not respond to Rock's argument on this issue and therefore waived it, so the Court need not definitively decide it.

## IV. Illinois Uniform Fraudulent Transfer Act

Last, the Court considers the parties' cross-motions as to Plaintiffs' claim under the Illinois Uniform Fraudulent Transfer Act (IUFTA), starting with Rock's motion for judgment on the pleadings.

### A. Rock's Motion

Rock argues that Count III must be dismissed because, pursuant to the internal affairs doctrine, Wyoming law and the Wyoming Limited Liability Act govern Rock's conduct rather than the IUFTA. Def.'s Memo. at 7–8, 11. Plaintiffs do not address Rock's contention that the internal affairs doctrine applies; rather, they argue that there is no difference between the Wyoming Uniform Transfer Act (WUTA) and IUFTA, so the law of the forum state (Illinois) applies. Pls.' Resp./Cx-Memo. at 22–23 (citing *Jean v. Dugan*, 20 F.3d 255, 260 (7th Cir. 1994)). Rock, in turn, retorts that the statute cited by Plaintiffs as the WUTA "appears to be nonexistent," so she cannot evaluate whether the two statutes are similar. Def.'s Reply/Cx-Resp. at 9. Moreover, asserts Rock, Plaintiffs fail to develop any argument about the statutes' similarity—and thus have waived the argument. *Id.* Finally, Rock argues that WUTA has a much shorter statute of limitations, which presents a determinative difference. *Id.*

Starting with the internal affairs doctrine, it is "a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—

because otherwise a corporation could be faced with conflicting demands." *CDX Liquidating Tr. v. Venrock Assocs.*, 640 F.3d 209, 212 (7th Cir. 2011). "The doctrine owes its existence to the principle that the law of the state of incorporation should govern the entire gamut of internal corporate affairs, most especially the relationships among a corporation and its officers, directors, and shareholders." *Sudholt v. Country Mut. Ins. Co.*, 83 F.4th 621, 626 (7th Cir. 2023) (cleaned up) (citing *McDermott Inc. v. Lewis*, 531 A.2d 206, 215 (Del. 1987) (explaining the internal affairs doctrine and defining "matters *peculiar* to corporations" as "those activities concerning the relationships *inter se* of the corporation, its directors, officers and shareholders" (emphasis in original)).

On the other hand, according to the authority cited by Plaintiffs, "before entangling itself in messy issues of conflict of laws a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states. Where there is no disagreement among the contact states, the law of the forum state applies." *Jean*, 20 F.3d at 260 (cleaned up). "The party seeking the choice-of-law determination bears the burden of demonstrating a conflict." *Sosa v. Onfido, Inc.*, 8 F.4th 631, 637 (7th Cir. 2021).

While Rock argues that the claim should be dismissed under the internal affairs doctrine, Plaintiffs' response/cross-memorandum is silent on the internal affairs doctrine. *See generally* Pls.' Resp./Cx-Memo. While Plaintiffs' failure to respond to the argument constitutes waiver, *see Bonte* 624 F.3d at 466, it does not mean that Rock prevails on her motion.

Indeed, Rock herself does little to explain why the internal affairs doctrine applies to Plaintiffs' IUFTA claim, *see* Def.'s Memo. at 7–8, and thus Rock also has engaged in waiver, *see Shipley,* 947 F.3d at 1063. And neither party examines whether the internal affairs doctrine trumps the widely accepted principle advanced by Plaintiffs, that, if "there is no disagreement among the contact states, the law of the forum state applies." *Jean*, 20 F.3d at 260.

No matter, because the Court finds the internal affairs doctrine inapplicable. That is, Plaintiffs' FAC does not implicate the affairs of the corporation vis-a-vis its officers, directors, and shareholders. Recall that Plaintiffs' IUFTA claim alleges that Rock engaged in fraud by using UB&E's assets for her personal expenses and debts, without providing reasonably equivalent value to UB&E Services, to UB&E Services' detriment. FAC ¶¶ 34–38. Unlike in *Sudholt*, Plaintiffs' claims do not involve "matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders." *Sudholt*, 83 F.4th at 626 (cleaned up). Put another way, unlike the claims in *Sudholt*, which required a "qualitative assessment of business judgments made by [defendant's] management," 83 F.4th at 627, here, at bottom the question is whether Rock engaged in fraud, which is more akin to a tort than a business judgment, *see, e.g.*, *In re The Heritage Org., L.L.C.*, 413 B.R. 438, 462 (Bankr. N.D. Tex. 2009).

The Court now turns to Rock's contention that there is an outcome determinative conflict between IUFTA and WUTA. Def.'s Memo. at 9. Federal courts sitting in diversity apply the choice-of-law rules of the forum state. *Sosa.*, 8 F.4th at

637. The forum here is Illinois, so Illinois' choice of law rules apply. "A choice-of-law determination is required only when a difference in law will make a difference in the outcome." *Id*. (cleaned up); *Townsend v. Sears, Roebuck, and Co.*, 879 N.E.2d 893, 898 (Ill. 2007). The party seeking a choice of law determination has the burden of establishing the existence of an outcome determinative conflict. *Sosa*, 8 F.4th at 637 (cleaned up).

As stated above, as the party seeking the choice-of-law determination, here Rock, "bears the burden of demonstrating a conflict." *Sosa*, 8 F.4th at 637. Rock argues that she cannot determine whether the laws are similar because Plaintiffs cite only to 2006 Wyo. Sess. Laws CH. 55 § 1, which she claims is nonexistent. Def.'s Reply/Cx-Resp. at 9. The citation, however, is to the session laws in which WUTA was enacted, and contains the entire text of WUTA. While it may have been preferable for Plaintiffs to cite to the statute itself, Wyo. Stat. Ann. § 34-14-201 *et seq.*, the Court finds that citing to the session laws is sufficient to indicate what law they are referencing. The only difference Rock points to between IUFTA and WUTA is the statute of limitations. Def.'s Reply/Cx-Resp. at 9. But, as Plaintiffs note in their cross-reply, the statute of limitations under WUTA is two years (while IUFTA's is four years), and it is undisputed that Rock transferred funds to herself and Maurer and to pay for personal expenses from UB&E Services' bank accounts at Fifth Third Bank and Wheaton Bank & Trust within the prior two years of the filing of Plaintiffs' lawsuit. Pls.' Cx-Reply at 17. Recall that "[a] choice-of-law determination is required only when a difference in law will make a difference in the outcome." *Sosa*, 8 F.4th at

637 (cleaned up). Because the statute of limitations difference is not determinative, it does not require a choice-of-law determination. Rock's general arguments that WUTA has "additional provisions that are not within" IUFTA does not satisfy her burden of establishing that there is an outcome-determinative difference between the laws. Therefore, the Court agrees with Plaintiffs that the law of the forum, here, Illinois, applies. The Court denies Rock's motion for judgment on the pleadings on Count III and turns to Plaintiffs' cross-motion for summary judgment.

**B. Plaintiffs' Cross-Motion**

Plaintiffs contend that they are entitled to summary judgment on their IUFTA claim because the undisputed evidence establishes that Rock committed both fraud in law and fraud and fact. Pls.' Resp./Cx-Memo. at 24.

IUFTA was enacted to allow a creditor to defeat a debtor's transfer of assets to which the creditor was entitled. 740 ILCS 160/5; *see Rush University Medical Center v. Sessions*, 980 N.E.2d 45, 52 (Ill. 2012). IUFTA's purpose is to "invalidate otherwise sanctioned transactions made with a fraudulent intent." *In re Marriage of Del Guidice,* 678 N.E.2d 47 (Ill. App. Ct. 1997).

Under IUFTA, a transfer is fraudulent as to a creditor if the debtor made the transfer:

> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor;
>
> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
> (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

> (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

740 ILCS 160/5(a).

Illinois recognizes two categories of fraudulent transfers: "fraud in law" and "fraud in fact" which are distinguished by "whether the transfer was supported by consideration." *Nw. Mem'l Hosp. v. Sharif*, 22 N.E.3d 1217, 1223 (Ill. App. Ct. 2014) (cleaned up). "A fraud in law transfer is where a transfer is made for no or inadequate consideration, the fraud is presumed and the intent of the parties to the transaction is immaterial." *Id.* (cleaned up). On the other hand, "where actual consideration has been given for the transfer and a specific intent to defraud has been proven, the transfer constitutes fraud in fact." *Id.* (cleaned up). According to Plaintiffs, Rock committed fraud in law and fraud in fact. Pls.' Resp./Cx-Memo. at 24–25. In support of fraud in law, Plaintiffs point to Rock's transfers to herself for her mortgage and car payments, as well as to Lance and Mahrer based on nothing but her undocumented representations on what the payments were for. *Id.* In support of fraud in fact and Rock's intent, Plaintiffs highlight Rock's failure to keep records to support UB&E Services' transactions, her failure to cooperate during Plaintiffs' audit of UB&E Services, submission of fringe benefits contributions "in an arbitrary and minimal amount to buy welfare insurance and pension credits for" Lance, and Rock's decision to dissolve UB&E following entry of the Judgments. *Id.* at 25.

Rock responds that "neither the Illinois Fraudulent Transfer Act [n]or the Wyoming Fraudulent Transfer Act is applicable to her as she is not the 'debtor.'"

Def.'s Reply/Cx-Resp. at 10 (citing 740 ILCS 160/2(f) ("debtor" means a person who is liable on a claim); W.S. 34-14-202(a)(vi)). Therefore, reasons Rock, a claim under either Act should be brought against UB&E, not her. *Id.* In a footnote in their cross-reply, Plaintiffs posit that, if Rock is found to be the alter ego of UB&E Services, she is a person liable on Plaintiffs' claim of amounts due based on delinquent contributions and withdrawal liability. Pls.' Cx-Reply at 17 n.6. At bottom, Plaintiffs concede that their claim against Rock under IUFTA is contingent upon a finding that Rock is the alter ego of UB&E Services. Presumably, given their IUFTA claim is under Illinois law, that alter ego analysis would be under Illinois, not federal law.[21] Plaintiffs do not set forth the Illinois alter ego factors or any analysis about them (and, to the extent they overlap with the federal alter ego factors, for the reasons discussed above, the Court finds there to be a question of fact as to whether Rock is the alter ego of UB&E Services). The Court need not determine whether Plaintiffs have established that there is no question of material fact as to fraud in law or fraud in fact, given there is a question as to whether Rock is UB&E Services' alter ego. Therefore, the Court denies Plaintiffs' cross-motion for summary judgment on their IUFTA claim.

## Conclusion

For the reasons given above, Rock's motion to dismiss/motion for judgment on the pleadings/motion for summary judgment [58] is denied in part and granted in part. Specifically, it is denied as to Counts I (alter ego) and III (Illinois Uniform

[21]Based on the lack of any argument from either party on the issue, the Court does not opine on whether an alter ego analysis is appropriate under Illinois law on such a claim.

Fraudulent Transfer Act) and granted as to Count II (veil piercing).[22] Plaintiffs' cross-motion for summary judgment [63] is denied. By August 28, 2026, the parties are directed to file a status report indicating: (1) whether the parties are mutually interested in a settlement conference before the Magistrate Judge; (2) whether the parties consent to proceeding with trial before the Magistrate Judge; (3) the anticipated number of days for trial; and (4) the expected number of witnesses. Upon review of the joint status report, if necessary, the Court will schedule an in-person hearing regarding trial setting.

Dated: August 19, 2026

United States District Judge
Franklin U. Valderrama

[22]Based on Rock's arguments for dismissal of Count II and the Court's analysis, the Court considers Rock's motion for dismissal of Count II to be brought under and granted under Rule 12(c).